## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) CIVIL ACTION NO. ) |
| v. | ) ) ) COMPLAINT |
| NISSIN BRAKE GEORGIA, INC., | ) ) JURY TRIAL DEMAND |
| Defendant. | ) ) |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and retaliation. The purpose of this action is to provide appropriate relief to Harlan Breaux ("Breaux"), who was adversely affected by such practices. The Equal Employment Opportunity Commission ("EEOC") alleges that Defendant Nissin Brake Georgia, Inc., ("Defendant") engaged in intentional discrimination against Breaux when it subjected him to a racially-hostile work environment and retaliated against him for engaging in protected activity.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Rome Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3), 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has been a Georgia corporation doing business in the state of Georgia and the city of Rock Spring, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of

Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Breaux filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On July 11, 2018, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. On August 24, 2018, Defendant advised the Commission that it was "unwilling to settle this case regardless of the conciliation terms proposed."

9. On August 30, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11. Since at least January 2016, Defendant has engaged in unlawful employment practices at its Rock Spring, Georgia facility, in violation of Sections

703(a) and 704(a) of Title VII, 42 U.S.C. 2000(e)-2(a), -3(a). Specifically, Defendant subjected Breaux to discrimination because of his race when it subjected him to a racially-hostile work environment and discharged him in retaliation for engaging in protected activity.

12. Defendant is a motor vehicle manufacturing parts supplier located in Rock Spring, Georgia.

13. Breaux is African American.

14. Breaux was employed by Defendant as a second shift supervisor in its Casting Department. Breaux was a salaried employee.

15. Sometime in March 2016, Breaux discovered racial slurs, including the "N word" on the bathroom wall. Breaux asked Human Resources to address it, but they did not.

16. When Defendant failed to address the racial slurs in the bathroom, Breaux directed employees to paint over the graffiti on at least three different occasions. Each time the slurs were painted over, they would re-appear.

17. Defendant did not investigate any of the incidents.

18. Breaux raised the issue of the racist graffiti in a staff meeting, but he was admonished by his superiors for bringing it up.

19. On April 7, 2016, Breaux counseled a subordinate employee for

failing to reach production goals. The employee, who is Caucasian, later called Breaux a "Big Black N-----."

20. Two weeks later, the same employee called another African American employee a "n-----." Breaux reported the misconduct to Human Resources. Defendant took no action and told Breaux that they wanted to give the employee another chance. When Breaux objected to the employee receiving no punishment for again violating Defendant's zero tolerance policy against racial harassment, he was accused of being racist by management.

21. Other employees, including another shift supervisor, also complained about and reported the racist graffiti to management.

22. Defendant's Human Resources Manager told Breaux that she wanted him to "leave [the issue of the racist graffiti] alone," because she did not want to see anything happen to him. Breaux was not sure if she was referring to his physical safety or his job security.

23. During this time period, someone placed nails under Breaux's car tires which caused him to have multiple flats.

24. Breaux became concerned for his physical safety at work.

25. Several days after raising the issue of the racist graffiti, Breaux was told that he had been improperly having other employees clock him in and out of

work, which violated Defendant's time-keeping policies. Breaux explained that he was recording the time the way he was trained to do, but he also apologized and immediately stopped the practice. The supervisor who accused Breaux of violating the time-keeping policies was known to refer to African Americans as the "N-word" in the workplace.

26. Breaux was discharged for the alleged timekeeping violation a few weeks later while other employees who also violated Defendant's time-keeping policies but who did not engage in protected activity were not discharged.

27. The effect of the practices complained of above has been to deprive Breaux of equal employment opportunities and otherwise adversely affect his status as an employee because of his race and/or for engaging in protected activity.

28. The unlawful employment practices complained of above were intentional.

29. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally-protected rights of Breaux.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents,

servants, employees, attorneys, and all persons in active concert or participation with it, from creating a work environment that is hostile to African American employees and discharging employees based on their race and/or for engaging in protected activity, and engaging in any other employment practices which discriminate against employees on the basis of race and/or because they engaged in protected activity.

B.  Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for African Americans and for employees who engage in protected activity and which eradicate the effects of its past and present unlawful employment practices.

C.  Order Defendant to make Breaux whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, front pay.

D.  Order Defendant to make Breaux whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.  Order Defendant to make Breaux whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices

complained of above, including emotional pain, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay Breaux punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully Submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANTONETTE SEWELL
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Supervisory Trial Attorney

*/s/Steven A. Wagner*
Steven A. Wagner
Trial Attorney

                    Georgia Bar No. 000529
                    steven.wagner@eeoc.gov

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
(404) 562-6897 (direct)
(404) 562-6905 (facsimile)